IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 08-MJ-045M |
| | ) | |
| | ) | |
| JUAN ANTONIO LOPEZ | ) | |

GOVERNMENT'S MOTION TO DISQUALIFY

The government moves to disqualify Attorney Benjamin Mesiti from the representation of the defendant, Juan Antonio Lopez, in the above-captioned case. The government maintains that there exists an actual conflict of interest or a serious potential for a conflict of interest that warrants disqualification.

FACTS

In the months preceding March 23, 2008, agents with the U.S. Drug Enforcement Administration (DEA) conducted an investigation into the distribution of heroin and cocaine in the State of Rhode Island and elsewhere. Based upon that investigation, agents believed that Ricardo Quezada, a target of their investigation, would be meeting with his supplier at a location in Connecticut on March 23, 2008.

On March 23, 2008, agents followed Quezada to a rest area north of Exit 59 on I-95 in Connecticut. Quezada was driving a black, Dodge mini-van. Quezada parked the van in the rest area parking lot outside of the McDonalds. Agents observed a man, later identified as Juan Antonio Lopez, get into the mini-van and sit in the front passenger seat. While in the vehicle, Lopez and

Quezada appeared to be having a conversation for approximately two minutes. During this conversation, Lopez appeared to be counting money. Lopez then exited Quezada's mini-van and got into a white Jeep Cherokee with a Massachusetts registration. Lopez drove to the area of the gas pumps. After several minutes, Lopez left the rest area parking lot and headed south on I-95. Agents began to follow Lopez. North of Exit 57, the Connecticut State Police stopped Lopez.

Lopez was removed from his vehicle by the state police. The Connecticut State Police turned Lopez over to the DEA agents and other officers who arrived on the scene. Detective Andre Perez, a Spanish-speaking detective, advised Lopez of his constitutional rights in Spanish in the presence of TFA Michael Naylor and TFA Joseph Colanduano. The agents asked Lopez if he spoke English and Lopez said, "yeah, pretty good." Lopez identified himself as "Geraldo Colondres" and claimed to be Puerto Rican. Agents questioned Lopez about whether or not he had any money. He said he had about $600. Lopez denied that he had any money or drugs in his Jeep Cherokee. Lopez said he had just stopped at McDonalds to go to the bathroom. TFA Colanduano seized a large roll of money from Lopez's pocket. The roll of money, which was wrapped in a small, elastic band, contained $971, much of which was in small denominations.

The Connecticut State Police used a drug dog to search

Lopez’s vehicle. The dog made a positive indication on and under the rear driver’s side seat. Agents looked under the rear driver’s side seat and lifted up a rug. Under the rug, where the canine had indicated, agents found a black, plastic bag containing three bundles of U.S. currency, wrapped in the same plastic band that was on the bundle of cash from Lopez’s pocket. There were also some loose bills in the black plastic bag. All total the bag contained $15,900.

An agent then said to Lopez, “I thought there was no money in the car.” The agents showed Lopez the black plastic bag containing the money. Lopez said that there was about $20,000 in the bag.

Agents then informed Lopez that they saw him meet with Quezada at McDonalds. They asked him why he met with Quezada. Initially, Lopez said, “I’m shipping a truck to the DR for that man.” Lopez continued to be evasive with the agents.

During a search of Lopez’s vehicle, agents seized four cellular phones. Lopez was taken to the DEA office in Warwick, RI. Agents advised Lopez of his constitutional rights a second time in Spanish and began to question him.

At this point, Lopez claimed to be “Juan Acevedo.” Lopez told agents that “Ricardo” (Ricardo Quezada) thought Lopez was the supplier, but Lopez claimed to only be a “middle man.” He claimed to be working for a lady named Madelaine. Agents then

told Lopez that they knew that Quezada was calling Lopez and not someone named "Madelaine." Agents showed Lopez a photograph of Quezada. Lopez admitted that he met with Quezada outside of McDonalds. He identified the individual in the photograph as "Ricardo," the individual he met at McDonalds. Lopez then told agents that his supplier's name was "Fernando" and that "Madelaine" collected the money for "Fernando."

Agents asked Lopez where the drugs were and what type of drugs were involved. Lopez admitted that the controlled substance involved was heroin. Lopez said he wanted to assist agents and get some drugs up here. Lopez told agents that the heroin was in the area of the McDonalds, "close by." Lopez said the drugs were with another man in the area. Agents asked Lopez if the other man saw the meeting at McDonalds. Lopez said that he did not.

Agents asked Lopez why there were no telephone calls on Lopez's phone after Lopez met with Quezada. Lopez said that he never called the man because Quezada did not have all of the money. Agents asked Lopez to have the man deliver the drugs now. Lopez then said the drugs were not there and were still in New York. Lopez said that there was a fifth phone in his Jeep, hidden in the backseat area. He said that the fifth phone was the phone he used to call his supplier in New York. Lopez offered to order some heroin from his supplier.

At this point, agents asked Lopez to explain again what he had said. Lopez told agents that he had met with Quezada "more than six times." He told them that he did not "bring the drugs today because the money he gives, that's not completed money for the drugs." Lopez said that Quezada gave him "twenty-three five." Lopez explained to the agents that Quezada would pay him in "portions" for the drugs. He said Quezada would pay him "half of the money" at a time. He admitted that the money he received on March 23, 2008 was for a kilogram of heroin that he had provided to Quezada at an earlier date.

Lopez was arrested by way of criminal complaint and had his initial appearance on March 24, 2008. At the initial appearance, Lopez was represented by Attorney Benjamin Mesiti. The preliminary hearing was set for March 27, 2008.

It came to the government's attention that Attorney Mesiti recently represented Ricardo Quezada.[1] On October 29, 2007 in the State of Rhode Island, Quezada, who was represented by Attorney Mesiti in the proceedings, was convicted of possession of heroin. According to "courtconnect.courts.ri.gov," the online

[1] Attorney Mesiti also represented Hector Figueroa, a defendant in a related case (Cr. 08-MJ-051M) before this Court. Attorney Mesiti represented Hector Figueroa in his efforts to recover $11,900 that was seized from Figueroa on October 2, 2007. The $11,900 was in found in a white, plastic bag with a majority of the bills in $10 and $20 denominations. A narcotic certified canine gave a positive indication for narcotics on the money. The status of that case is unknown to the undersigned.

source of docket reports, the most recent docket entry posted with respect to Quezada's case is February 20, 2008, in which it indicates, "Payment Applied."

At the preliminary hearing, the government brought the conflict to the Court's attention. After a brief discussion on the record, the government asked that the Court disqualify Attorney Mesiti from representation of Lopez. The Court asked the parties to brief the issue of conflict of interest and the appropriate procedure for the handling of a conflict scenario. Immediately following the hearing, the government spoke with Attorney Alberto Aponte Cardona, who was present for the hearing. He claimed to represent Quezada. According to his business card, Attorney Cardona's office is located at the same address as Attorney Mesiti's office. The two attorneys also have the same facsimile number, although their respective business cards indicate different telephone numbers.

LAW

Although a presumption exists in favor of the defendant's selection of counsel, In re Grand Jury Proceedings, 859 F.2d 1021, 1024 (1988), the Sixth Amendment right to counsel of one's choice is not without limits. See Wheat v. United States, 486 U.S. 153, 159 (1988) (affirming a district court's decision to refuse to allow a defendant to substitute his counsel for that of co-defendant). "Federal courts have an independent interest in

ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. In a situation where a defendant seeks to be represented by an attorney who has an actual conflict of interest or the "serious potential" for a conflict of interest, the district court is placed in a difficult position. Id. at 161-164. If the court assents to the representation, and advocacy is later impaired, then the defendant may raise an ineffective assistance of counsel claim; however, if the court denies the defendant his counsel of choice due to an actual or potential conflict of interest, then the defendant may also raise a Sixth Amendment challenge to his conviction. Id. at 161.

"A district court can disqualify a defendant's attorney over that defendant's objection where it finds either an actual conflict or a serious potential conflict." United States v. Lanoue, 137 F.3d 656, 663 (1st Cir. 1998) (affirming the district court's decision to preclude counsel from representing a defendant when counsel had previously represented a co-defendant, even though both clients waived and the first client signed an affidavit that he had no knowledge of the defendant's involvement). To find an actual or potential conflict of interest warranting disqualification of an attorney from representation, "generally there must be a direct link between

the clients of an attorney-or at least some concrete evidence that one client, such as an immunized witness, has information about another client, such as a target of a grand jury investigation-before the right to counsel of choice is barred by disqualification." In re Grand Jury Proceedings, 859 F.2d at 1026 (disqualification reversed where both the present client and the past client waived any right to conflict-free representation and the court found no direct link between clients).

Local Rule General 208 provides that the Rules of Professional Conduct as adopted by the Rhode Island Supreme Court will govern attorney conduct in the U.S. District Court for the District of Rhode Island. Loc. R. Gen. 208. Rule 1.7 of the Rhode Island Rules of Professional Conduct provides that a "conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." RI Rules of Prof'l Conduct, RI Sup. Ct. R. 1.7. That rule goes on to state that a conflict of interest may be waived if both clients assent, the lawyer reasonably believes that he will be able competently represent each client, the representation is not prohibited by law, and the representation does not involve the assertion of a

claim by one client against another client represented by the lawyer in the same litigation. Id. Rule 1.9 of the Rhode Island Rules of Professional Conduct bars successive representation of clients in the same or a substantially related matter unless both clients give consent. RI Rules of Prof'l Conduct, RI Sup. Ct. R. 1.9. Rule 1.9 also precludes the use of the former client's privileged information. Id.

ARGUMENT

In this case, Attorney Mesiti represented Ricardo Quezada in a felony heroin case as recently as October 29, 2007. The defendant admitted to law enforcement that he met with Quezada on March 23, 2008 in a heroin related transaction. According to the defendant's confession, some of which was recorded, the defendant had dealt with Quezada more than 6 times. He admitted that he sold Quezada a kilogram of heroin at a time, and that he met with him every 3-4 weeks. Based upon the defendant's statement there appears to be a very real possibility that he was dealing heroin with Quezada during the time period in which Attorney Mesiti represented Quezada in Rhode Island State Court for possession of heroin. Based upon these facts, the government would submit that Attorney Mesiti represented Quezada in the same or a substantially related matter to the instant prosecution of the defendant. Absent a waiver of both clients, the Rhode Island Rules of Professional Conduct bar Attorney Mesiti's continued

representation of the defendant.

If both the defendant and Quezada waive Attorney Mesiti's representation, then the Court will have to assess whether there is an actual or a serious potential conflict of interest that should nonetheless bar Attorney Mesiti's continued representation of the defendant in these proceedings. Attorney Mesiti stated that he did not agree that there was a conflict of interest. However, in light of the facts garnered in the investigation and the defendant's confession, some of which was recorded, there is a real possibility that Mr. Quezada will be a witness against the defendant or vice versa. If the former situation arises, then Attorney Mesiti will be forced to cross-examine his former client. If the latter situation arises, then Attorney Mesiti will be in a position which requires that he assist the defendant with his cooperation with the government against Quezada, but not reveal Quezada's confidences or otherwise violate his obligations to Quezada. The entire situation is compounded by the fact that apparently Quezada is now represented by Attorney Alberto Aponte Cardona, an attorney with the same address and facsimile number of Attorney Mesiti. In light of these facts, there appears to be a serious potential that Attorney Mesiti will be placed in an untenable position should he continue to represent the defendant. See United States v. Lemieux, 532 F.Supp.2d 225, 233-34 (D.Mass. 2008) (holding that the attorney's degree of involvement with the

co-defendant, at the initial appearance and probable cause hearing, mandated disqualification); compare United States v. Morrell-Corrada, 343 F.Supp.2d 80, 85 (D. Puerto Rico 2004) (finding no conflict warranting disqualification where the former client, who was a government witness, did not directly implicate present client, the former client had waived the attorney-client privilege, and the defendant waived conflict-free representation).

## CONCLUSION

Based upon the above, the government asks that Attorney Mesiti be disqualified from representing the defendant in these proceedings. Should the Court not find an actual conflict or a serious potential for conflict warranting disqualification, the government asks that the Court hold a hearing in accordance with United States v. Foster, 469 F.2d 1 (1st Cir. 1972).

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Sandra R. Beckner
SANDRA R. BECKNER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email sandra.beckner@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2007, a copy of the within “Government’s Motion to Disqualify” was filed electronically and is available for viewing and downloading from the ECF system.

A copy of the motion has been faxed and mailed to the following:

Mr. Benjamin Mesiti
597 Broad Street
Central Falls, Rhode Island 02863
Fax (401) 475-5439

/s/ Sandra R. Beckner
SANDRA R. BECKNER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email sandra.beckner@usdoj.gov