IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
VS : CA NO.: 08-041-01ML
:
JUAN ANTONIO LOPEZ :

**PRETRIAL MOTION TO SUPRESS EVIDENCE GAINED FROM A CONSTITUTIONALLY INFIRM ARREST, SEARCH AND SEIZURE AND STATEMENT TAKEN THEREIN**

Defendant moves to suppress any and all reference to or use of, oral and tangible evidence seized from, JUAN ANTONIO LOPEZ, on or about March 23rd, 2008 on the grounds that the arrest, search and seizures were made in violation of the U.S. Const. Amendments IV, V and IV.

Defendant herein incorporates by reference the memorandum of law in support of a Motion to suppress evidence gained from a Constitutionally infirm arrest, search and seizure and statements taken therein.

Respectfully Submitted

By his Attorney,

//S// Benjamin Mesiti
____________________________

Benjamin A. Mesiti, Esq. #6840
597 Broad Street
Central Falls, RI 02863
(401) 335-3392
(401) 475-5439

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS | : | CA NO.: 08-041-01ML |
| | : | |
| JUAN ANTONIO LOPEZ | : | |

**PRETRIAL MEMORANDUIM OF LAW IN SUPPORT OF A PRETRIAL MOTION TO SUPRESS EVIDENCE GAINED FROM A CONSTITUTIONALLY INFIRM ARREST, SEARCH AND SEIZURE AND STATEMENT TAKEN THEREIN**

**FACTS**

On or about the 23rd day of March, 2008, Juan Antonio Lopez (hereinafter "Lopez") was detained and arrested at a Connecticut rest stop by DEA Agents after he met with a Ricardo Quezada (hereinafter "Quezada"), and then was taken to the DEA offices in Warwick, RI for questioning. At this time, Lopez allegedly gave a statement admitting to selling quantities of heroin to Quezada on several occasions.

Persuant to a Title III wire tap, two brief conversations between Quezada and Lopez had been observed and recorded by DEA Agents prior to the rest stop incident. While under observation, Quezada met with Lopez at a Connecticut rest stop. There, Lopez entered Quezada's vehicle. DEA Agents, observing from inside the McDonald's restaurant, allegedly saw that Lopez appeared to be counting money. Lopez then exits Quezada's vehicle and gets back into his own vehicle.

As Lopez is exiting the rest stop, he is pulled over by DEA and State Police. Lopez is taken out of the vehicle and arrested. Lopez gives consent to search, and Police call for a K-9 dog. The search of Lopez's vehicle finds $16,871.00 in cash and several

vehicle titles as well as paperwork in the name of Quezada. Lopez states to the Agents that he met with Quezada to obtain the money and papers to ship trucks to the Dominican Republic. Lopez is then taken to the DEA offices in Warwick, RI where Lopez is questioned about suspected drug activity. Lopez makes several inconsistent and uncorroborated statements to Agents, but then gives what the Government avers to be a full confession to selling quantities of heroin to Quezada on several occasions. The end of the interrogation is then recorded.

Meanwhile, Quezada is followed and stopped in Rhode Island. A subsequent search of his vehicle found no drugs.

## ARGUMENT

The Defendant contends that he was arrested illegally, that is, without probable cause, and that any fruits of the arrest and search should be suppressed. Also, Agents lacked the requisite corpus dilicti to establish that a crime had been committed.

### *PROBABLE CAUSE TO ARREST:*

An arrest, with or without a warrant requires probable cause. It must stand on firmer ground than mere suspicion. Wong Sun v United States, 371 U.S., 471, 479 (1962). An "unparticularized suspicion or hunch" is insufficient to warrant a stop and search. United States v. Sandoval-Espina, 459 F. Supp.2d 131 (D.R.I. 2006).

“Mere fraternization with drug dealers does not provide probable cause for arrest.” United States v. Carter, 21508 FED3, 06-4021. There must be other interrelated factors combined to establish probable cause. *Id.*

Probable cause is a fluid concept and must be evaluated upon the totality of the

circumstances. Illinois v Gates, 462 U.S. 213, 238 (1983). A probable cause determination is fundamentally a fact-specific inquiry, and every case must be evaluated on its own facts and circumstances. United States v Khounsavanh, 113 F. 3d 279 (1st cir 1997). An officer has probable cause to arrest when he personally knows or has been reliably informed of facts sufficient to justify a person of reasonable caution to believe not only that a crime has been committed but also that the person to be arrested has committed the crime. Henry v United States, 361 U.S. 98. 103-104, 80 S.Ct. 168-171, 72 L.Ed. 2d. 134,139 (1959). Whether an arrest is constitutionally valid depends upon whether, at the moment the arrest was made, officers had probable cause to make it. United States v Winchenbach, 31 F. Supp. 2nd 159 (1998).

Police must rely upon trustworthy facts and circumstances that would lead a reasonable and prudent person to believe that the suspect has committed a crime. United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997). "Probable cause is a common sense, non-technical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Meade, 110 F.3d 190, 198 n.11 (1st Cir. 1997).

Taking into account the totality of the circumstances in the instant case, the police were not reasonable in their belief that, at the moment of arrest, the suspect had participated in any illegal activity. The two intercepted telephone conversations between Lopez and Quezada would not cause a person of reasonable senses to infer that an illegal act was about to take place (since the details of these calls are still under seal, this memorandum will simply incorporate them by reference.) In fact, the conversations were very brief and made no reference, coded or otherwise, to any illegal activity. A

reasonable person listening to these calls would not be able to determine such things as quantities of drugs, amounts of monies to be exchanged, descriptions of people and vehicles involved, or even that a crime was about to be committed. Prior to these calls, Agents did not know who Lopez was, quantities of drugs to be exchanged, amounts of money to be exchanged, a description of Lopez or his vehicle, or that a crime was about to be committed. Therefore, Agents could not properly rely on these calls when considering the totality of the circumstances.

Agents then attempt to rely on observations stating that they see Lopez exit his vehicle and enter Quezada's vehicle. At that time, Agents claim to see Lopez "concentrating his attention downward" and "appeared" to be counting money. Again, a reasonable person seeing this would not be able to infer that any illegal activity was taking place. The Agent's own report lends certainty to this inference by stating that Lopez "*APPEARED*" to be counting money. (Emphasis added). If Agents had seen actual money being counted, the report would have certainly stated so. Therefore, it is unreasonable for Agents to have relied on this observation when considering the totality of the circumstances.

Lopez is then stopped by Agents and arrested. Agent reports aver that Lopez gave consent to search his vehicle. After executing a search, Agents find $16,871.00 in a bag located behind the driver's seat, and paperwork in the name of Lopez and Quezada. Upon questioning, Lopez states that there are no drugs in the vehicle and that the money found was to ship trucks to the Dominican Republic. Indeed, there were no drugs found in the vehicle and the paperwork found consisted of several commercial truck titles and paperwork from the shipper to send these trucks to the Dominican Republic. Even so,

Lopez is placed in a police cruiser and taken from Connecticut to the DEA offices in Rhode Island. A reasonable person, given the totality of the circumstances, could only come to one corroborated conclusion; that the money was for the shipment of trucks to the Dominican Republic, and not intended for illegal purposes. Therefore, at the moment of arrest, Agents lacked the requisite probable cause to infer that a crime had been committed, and did violate the Defendant's Forth Amendment protection against illegal arrest.

Further, any evidence obtained after this arrest should be suppressed under the "fruit of the poisonous tree" doctrine. If the initial arrest was unlawful, any evidence, tangible or intangible, is to be excluded. Wong Sun v United States, 371 U.S. at 484, 83 S.ct at 416, 9 LEd 2d at 453.Agents did not have the requisite probable cause to arrest Lopez, and therefore, his statements must be excluded from trial as "fruit of the poisonous tree." Even given the totality of the circumstances, Agents could not have formed the requisite probable cause to arrest. Questioning that turns into an arrest must be supported by probable cause. United States v. Moreno, 742 F.2d. 532 (1984), Florida v. Royer, 460 U.S. 491 (1983).

***CONSENT TO SEARCH:***

The government has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden not satisfied by showing a mere submission to a claim of lawful authority Florida v Royer, Id, Brown v Illinois 422 U.S. 590 (1975). Consent itself can be tainted by the illegal detention and be suppressed Florida v Royer, ibid.

A signed consent form will bolster the claim of voluntariness of consent especially where a language barrier is at issue. United States v. Gaviria, 775 F. Supp. 495 (1991). However, if the consent form is in the English language, that may not be enough. United States v. Suarez, 649 F. Supp. 926, 939 (1988). Even if the consent form is translated, the court must find the translation adequate. *Id*.

Agents did not properly assess Lopez's English speaking ability, but merely relied on his own assertion that he spoke English "pretty good." Lopez was allegedly explained his rights in Spanish, but never signed any rights form or consent to search. If Lopez did not fully understand his Miranda rights, then his consent fails and the evidence that follows must be suppressed.

Moreno and Royer have analogous fact patterns to the instant case. In both cases, narcotics detectives observed behavior in an airport that was consistent with the profile of a "drug courier." Further, the airline ticket and license of the suspect had different names. In one case, the Defendant was seen briefly speaking with another male, and making some suspicious movements. The suspect was then taken to a small adjacent room and obtained consent to search pieces of luggage where illegal narcotics were eventually uncovered. "The respondent had been involuntarily confined within the small room without probable cause, that, at the time his consent to search was obtained, the involuntary detention had exceeded the limited restraint permitted by Terry v. Ohio, 392 U.S. 1." Royer at 491. At the time Lopez was stopped and removed from his vehicle, he was not free to leave, and therefore, arrested for the purposes of the Forth Amendment. This is evidenced in the Agents own report that states "Lopez was arrested, and after being taken from the vehicle he was read his Miranda rights." As such, and without

probable cause for this arrest, his consent to search his vehicle fails.

***STATEMENTS:***

For a defendant's custodial confession to be admissible, the state must show that the suspect's waiver of his or her *Miranda* rights was "voluntary, knowing and intelligent." State v. Marini, 638 A.2d 507, 511 (R.I. 1994). *Miranda* warnings do not alone sufficiently deter a fourth amendment violation. Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness, but that it is “sufficiently an act of free will to purge the primary taint.” Statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will Dunaway v New York, 442 U.S. 200 at 218-219 (1979), Brown v Illinois, 422 U.S. 590 (1975). Where a suspect exhibiting behavior of illegal activity is simply questioned, there is no violation of the forth amendment, however, if the questioning escalates into detention, there must be sufficient probable cause for the arrest. Moreno, at 534. The exclusionary rule also prohibits at trial the use of verbal evidence which derives so immediately from an unauthorized arrest and is no less the “Fruit” of official illegality than the more common tangible fruits of the unwarranted intrusion. Wong Sun, at 485.

The factors this Court may consider are the background, experience and conduct of the accused, as well the level of a suspect’s educational attainments. State v. Garcia, 643 A.2d 180,189 (R.I. 1994); State v. Crowhurst, 470 A.2d 1138, 1142 (R.I. 1984). "The defendant's lack of familiarity with police procedures in this country, his alienage, and his limited ability to speak and understand the English language contributed significantly to

the degree of coercion present at a Drug Enforcement Agency office". Geviria *citing* Moreno. If Agents did not sufficiently overcome the language barrier between themselves and Lopez, then his consent, and subsequently his statements, should be excluded from trial.

"The requirement of corroboration is rooted in the long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations that extend beyond the words of the accused." Wong Sun v United States, 371 U.S., 471. As part of the res gestae, there must be a legitimate inference of the commission of a crime, independent of admissions or confessions of the accused. Carr v. State, 21 Ala. App. 299. Where a crime has no tangible corpus dilicti, evidence must be corroborated to show that the accused has committed a crime. Wong Sun at 491. "In the absence of some corroborative evidence tending to prove the corpus dilicti, a confession or self-incriminating statement will not be admitted into evidence because such an uncorroborated statement is insufficient to prove corpus dilicti." State v. Wilbur, 115 R.I. 7, 13, 339 A.2d 730, 734 (1975).

There is insufficient evidence to corroborate Lopez's statements that he was involved in illegal drug activity. More importantly, there was ample evidence to corroborate Lopez's assertion that the money found in his vehicle was for the purpose of shipping trucks to the Dominican Republic. At that moment, what little uncorroborated articulable suspicion DEA Agents had was usurped by the corroborated evidence found on scene, even if that evidence was contrary to what Agents were expecting to find. "What had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in the police interrogation room, where the police, unsatisfied

with previous explanations, sought to confirm their suspicions." Moreno at 534. Agents, unsatisfied with the corroborated exculpatory evidence, took Lopez dozens of miles away to the DEA offices in Warwick, RI for further questioning. This was all done without probable cause, and therefore, the Defendant's statements should be excluded.

## CONCLUSION

As the Court ruled in Wong Sun, it is customarily emphasized, that application of the exclusionary rule on Defendant’s behalf protects Fourth Amendment guarantees in two respects; in terms of deterring lawless conduct be federal officers, and by closing the doors of the Federal Courts to any use of evidence unconstitutionally obtained. The rule's purpose is to *deter*; to compel respect for the constitutional guarantee "in the only effectively available way — by removing the incentive to disregard it.” United States v. Melendez-Garcia, 28 F.3d 1046, 1054 (10th Cir. 1994). (Emphasis added). Here the disregard for the Fourth, Fifth and Fourteenth Amendment by the DEA Agents was evident, and they should be reproved.

Under the "totality of the circumstances" no probable cause existed at the moment of arrest of the Defendant to warrant a reasonable person to believe that Lopez was involved in illegal activity. Brief, uninformative telephone calls, coupled with the fraternization with a narcotics suspect are insufficient corroborative evidence to establish probable cause to arrest. Here, Lopez was arrested prior to being asked for his consent to search his vehicle. Therefore, the contents of his vehicle as well as any statements made in conjunction with his arrest, should be suppressed.

Agents did not have the requisite probable cause to arrest Lopez, and therefore, his statements must be excluded from trial as "fruit of the poisonous tree." Even given the totality of the circumstances, Agents could not have formed the requisite probable cause to arrest. As discussed earlier in Moreno and Royer, questioning that turns into an arrest must be supported by probable cause.

The consent Lopez allegedly gave while under arrest was "tainted" by the illegal arrest and any statements or evidence obtained as a result should be suppressed.

Respectfully Submitted,

//S// Benjamin Mesiti

Benjamin A. Mesiti, Esq. #6840
597 Broad Street
Central Falls, RI 02863
(401) 335-3392
(401) 475-5439 [fax]